Lambert *vs.* Ingram's Administrator.                PET. Eq.

APPEAL FROM HENDERSON CIRCUIT.                Case 33.

1. Two individuals, partners, equally entitled to a debt, received slaves in mortgage to secure its payment; the slaves not being redeemed, and supposing they had absolute right to the slaves, divided them. Bill was filed by mortgagor to redeem, and redemption decreed, and each was compelled to account for the hire of the slaves which he held under the division, toward the extinguishment of the mortgage debt. There was an inequality in the value of the hires of the two lots of slaves. Held—that the one who had received the greatest amount of the original debt in the hire of slaves, was bound to account to the other for his equal proportion.

2. When a defendant fails to answer, the 418th section of the Code of Practice authorizes the court to assess damages, especially where the petition shows the amount claimed—sustained by record evidence made part of the petition.

The facts of the case are stated in the opinion of the court.—*Rep.*

*J. M. Harlan,* for appellant—

The demurrer to the bill should have been sustained. Lambert and Ingram, in their joint answer to the bill of Walker, filed to redeem the slaves, contend that the slaves were absolutely the property of the partnership. The bill in this case shows that they so regarded them, and upon the dissolution of the partnership, Lambert took Lewis and Ingram took Rachel, there being but two slaves. Is it not fair to presume that each took a slave at his own risk. What did it matter to them—dealing with each other upon liberal terms—that one of the slaves might hire for a little more than the other? Did they not suppose, when dividing the slaves, that it was an equal division? Various considerations may have influenced them in the division. Rachel might have been more desirable to Ingram than Lewis, and Lewis more desirable to Lambert than Rachel. It is sufficient that the parties regarded them as of equal value. The bill of sale found in the record shows

LAMBERT
*vs.*
INGRAM'S ADM'R

Rachel to have been about three years older than Lewis, and probably at the division most valuable on hire, and may have continued to be so, if she had not had children. This latter fact should not prejudice Lambert. The circumstances which occurred subsequent to the division should not have any effect upon the rights of the parties.

The Circuit Court should not have rendered judgment for the plaintiff without the intervention of a jury. The failure to answer did not admit the amount claimed by plaintiff. (*See Code of Practice, sec.* 153, *new ed.*) A reversal is asked on each of the grounds suggested.

*Hughes & Dallam,* for appellee—

1. The parties labored under a misapprehension as to their title to the slaves at the time of the division. That division affected no change in the right of Walker, the mortgagor. He had the right and did treat them as jointly holding the slaves, subject to his right of redemption. The chancellor so treated them, and upon that principle decided the case.

2. The parties evidently, if they had known the rights of Walker as they were declared by the chancellor upon the bill to redeem, would have acted differently. It might then perhaps have been presumed that each agreed to risk the title to the slave he received; but such was not the case, as is admitted by the failure to answer, and other facts in the record. If one of these parties had lost the slave which he received, by a superior title, can it be doubted that the other would have been responsible for contribution? We suppose not. The principle is analogous to that in the present case.

The justice of the case for appellee is apparent from a plain statement of facts. A debt of $1,000, with interest swelling it to $1,555, is found to be due from Walker to the firm of Lambert & Ingram. Of this debt Lambert receives $1,225, Ingram $330, and the debt is extinguished. . Can the fact that the pay-

ment has been made in the hire of negroes, rather than in money, change the principle?

It may be said that the parties considered the slaves as of equal value. This may have been true in fact, as to the fee in the slaves, but the court can readily perceive the difference between the value of a slave for hire and the estate in fee.

3. We contend that the Circuit Court had the right to render the judgment without a jury under the 153d section of the Code of Practice. It is a case of contract, as contradistinguished from tort, and no answer was filed. We ask an affirmance of the judgment.

Chief Justice MARSHALL delivered the opinion of the Court—                    January 31.

[Judge STITES did not sit in this case.]

In 1838 Lambert and Ingram, being partners, advanced to Walker $1,000, and received from him an absolute bill of sale for two slaves, Lewis and Rachel, for the alleged consideration of $1,000 in hand paid, but giving to Walker at the same time a writing which stated that the sum of $1,000 had been borrowed, and the two negroes given to pay the interest but to be returned when the $1,000 should be paid, for which four years were allowed if the negroes, who were to be at Walker's risk, should live so long. It seems that Walker also executed at the same time a note to Ingram & Lambert, for $1,-000, which is spoken of as an indemnity in case of the death of the slaves. Upon the dissolution of the partnership of Ingram & Lambert, the slaves conveyed to them by Walker were divided, Lambert taking Lewis and Ingram taking Rachel. In 1846, Walker having in the mean time died, his administrator filed a bill to redeem Lewis and Rachel, and the children of the latter. Ingram & Lambert, in a joint answer, resisted the redemption, and claimed on various grounds that the transfer of the slaves was or had become absolute. The transaction however was determined to be a mortgage; and on taking an account of hires, and interest, &c., it was found and

is stated in the commissioner's report, which was confirmed and made the basis of the decree, that Lambert had received of hires, &c., $1,255, and Ingram had received of hires, &c., $330. In June 1853, before which time Rachel had died, the court decreed that the hires had fully paid the original debt and interest, and setting off one against the other, decreed a restoration of such of the slaves as were living.

After this decree had been executed, Ingram being dead, his administratrix filed her petition against Lambert, in which, after alleging the supposed purchase by Ingram & Lambert of the two slaves, the dissolution of partnership, the division of the slaves, the subsequent suit by Walker's administrator, the commissioner's report which is averred to have been correct as to the hires, &c., received by the parties respectively, also the decree thereon, and the delivery of the surviving slaves in pursuance of it, the record of said suit being made part of the petition, the plaintiff alleging further that the debt of Walker had been paid in no other manner than by the hires of said slaves received as above stated, prays that she may have a judgment against Lambert for one-half of said debt, viz: $500, with interest, &c., less the sum of $330, the hires received by Ingram, to be credited as paid on the 4th of June, 1853, the date of the decree.

A demurrer to this petition was overruled, and the defendant having refused to answer further, a judgment was rendered against him as prayed for in the petition. Upon his appeal from that judgment, two questions are made. 1st. Does the petition show a good cause of action? and 2d. Had the court a right to render the judgment without a jury? We think each of these questions must be answered in the affirmative.

It must be assumed on the face of the petition and the record referred to that when Ingram & Lambert divided the slaves, they supposed the right of redemption was lost or abandoned; and that the slaves

1. Two individuals, partners, equally entitled to a debt,

were their absolute property, and that the debt for which they had been pledged was paid off and extinguished. But in fact and in law the slaves were theirs or in their possession only as a means of paying by their hires or services the debt which still subsisted, except so far as paid in this way. And although, if this had been understood by the parties, it might have been inferred from the division as made that by reason of some fact or right then understood, Lambert was to receive as much more of the debt of Walker as the hire or services of Lewis exceeded in value the hire or services of Rachel. The division was made not upon this basis, not upon the comparative value of the hire or services or temporary property of the two slaves, which was too unequal to escape observation, but upon the comparative value of the fee or absolute property in them, which for all that appears was equal and was so estimated by the parties. There is no ground for inferring any intentional inequality in the value of the slaves as divided, and therefore no presumption of any inequality of right or interest in the debt, which still subsisted, though they supposed it to be extinguished.

Then the case as made out in the petition is simply this: that the parties being equally entitled to the debt due from Walker, each of them has received a part by which the whole has been extinguished, but that in consequence of a mutual mistake, and without any greater right in or to that debt in one than in the other, and without any intentional admission or assertion of such greater right, one has in fact received much more of it than the other. And this not in consequence of any mere casualty, which may have diminished the value of the receipts by one, or enhanced the value of the receipts by the other, but by reason of an unknown but original and existing defect in their own title to the slaves, which they supposed they held in discharge of the debt, and by the equal division of which they intended to equalize and supposed they were equalizing their respective re-

LAMBERT
*vs.*
INGRAM'S ADM'R

received slaves in mortgage to secure its payment; the slaves not being redeemed, and supposing they had absolute right to the slaves, divided them. Bill was filed by mortgagor to redeem, and redemption decreed, and each was compelled to account for the hire of the slaves which he held under the division, toward the extinguishment of the mortgage debt. There was an inequality in the value of the hires of the two lots of slaves. Held—that the one who had received the greatest amount of the original debt in the hire of slaves, was bound to account to the other for his equal proportion.

ceipts from that debt. We suppose the right of one partner or joint owner, to recover the excess thus received by the other through their mutual mistake, and when both were equally entitled, stands on the same ground as if the excess had been produced by a mistake in the addition of their respective accounts, and that even if it be not quite so clear or so easily demonstrated, it rests essentially upon the same principles of justice and right, and is equally enforceable at law or in equity.

2. When a defendant fails to answer, the 418th section of the Code of Practice authorizes the court to assess damages, especially where the petition shows the amount claimed —sustained by record evidence made part of the petition.

The demurrer to the petition was therefore properly overruled. The 418th section of the original Code authorized the court without a jury to ascertain the amount for which judgment should be rendered on failure of the defendant to answer. And if the petition itself, taken for confessed, did not furnish sufficient data, there was enough in the record referred to and made part of it to enable the court to determine all the facts necessary for fixing the amount as adjudged. We do not however decide that the unanswered averments of the petition were not sufficient.

Wherefore the judgment is affirmed.